J-S19039-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KAHLIL MURRAY, | : | |
| | : | |
| Appellant | : | No. 1225 EDA 2018 |

Appeal from the PCRA Order March 23, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005584-2008

BEFORE:  LAZARUS, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:            **FILED JULY 09, 2019**

Kahlil Murray (Appellant) appeals from the March 23, 2018 order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

A prior panel of this Court summarized the factual and procedural background of this case as follows.

> On May 10, 2007, Appellant and two co-conspirators broke into a home, restrained two victims, and terrorized them with an electric saw for approximately two hours in an attempt to obtain drugs and money from them. Police apprehended Appellant and his co-conspirators a short time later after a police chase. …
>
> On September 15, 2008, a jury convicted [Appellant] on the charges of robbery (victim, Donovan Henry), robbery (victim, Angela Watson), burglary, conspiracy to commit robbery, firearms carried without a license and possessing an instrument of crime. … Pursuant to a pre-trial agreement with counsel, [the trial court], after the jury's verdict on firearms carried without a license,

* Retired Senior Judge assigned to the Superior Court.

entered a verdict of guilty for persons prohibited from possessing a firearm. On December 15, 2008, [the trial court] sentenced [Appellant] to an aggregate sentence of [20] to [40] years [of] incarceration followed by ten years [of] probation. On December 18, 2008, [Appellant] filed a notice of appeal to [this Court]. On February 23, 2010 [this Court] remanded the matter for resentencing at [the trial court's] request. On June 30, 2010, [the trial court] imposed new sentences for [Appellant's] burglary and conspiracy convictions as well as one of his robbery convictions. [Appellant's] sentence for the second robbery conviction remained in place. [Appellant received an aggregate sentence of 18 to 36 years of incarceration followed by ten years of probation.] On July 2, 2010 [Appellant] filed a motion for reconsideration of his sentence. On July 19, 2010 [the trial court] denied the motion without a hearing.

*Commonwealth v. Murray*, 34 A.3d 219 (Pa. Super. 2011) (unpublished memorandum at 2) (unnecessary capitalization, parenthetical numbers, and citations omitted). On appeal, this Court affirmed, and our Supreme Court denied Appellant's petition for allowance of appeal. *Id.* (unpublished memorandum at 1), *appeal denied*, 40 A.3d 1235 (Pa. 2012).

On November 13, 2012, Appellant *pro se* filed the instant PCRA petition. Counsel was appointed and filed an amended petition on August 14, 2014. Subsequently, new counsel was appointed, and counsel filed a supplemental petition on December 17, 2015, adopting the claims raised in the amended petition and raising new claims. Altogether, Appellant raised four claims of ineffective assistance of trial counsel and one claim of after-discovered evidence related to a letter about co-defendant Shariyq Orr.

- 2 -

On April 28, 2017, the PCRA court held a hearing on two of the ineffective assistance of counsel claims: (1) trial counsel's failure to investigate the getaway vehicle, and (2) trial counsel's failure to call alibi witnesses. On June 3, 2017, the PCRA court issued notice, pursuant to Pa.R.Crim.P. 907,[1] of its intent to dismiss Appellant's PCRA petition. Appellant responded on July 20, 2017,[2] asserting a new after-discovered claim based on co-defendant Orr's affidavit claiming that Appellant was not involved in the robbery. On January 25, 2018, the Commonwealth filed a supplemental motion to dismiss Appellant's PCRA claim relating to Orr's affidavit. The PCRA court denied Appellant's petition on March 23, 2018.

---

[1] Rule 907 only applies to dismissal of claims without a hearing; so such notice was unnecessary for the claims upon which the PCRA court granted a hearing. Nonetheless, we note with displeasure that the PCRA court failed to state in the notice the reasons for dismissal of those claims it intended to dismiss without a hearing. Pa.R.Crim.P. 907(1) (requiring the PCRA court to "state in the notice the reasons for the dismissal"). However, Appellant replied to the notice and does not complain on appeal that he was prejudiced by the deficient notice. Therefore we do not address this deficiency further. *See Commonwealth v. Weimer*, 167 A.3d 78, 86 (Pa. Super. 2017) (finding no merit to claim that defective Rule 907 notice denied Weimer the right to file an amended petition where PCRA court accepted numerous filings, responses, and objections to the Rule 907 notice); *Commonwealth v. Zeigler*, 148 A.3d 849, 851 n.2 (Pa. Super. 2016) (finding that because Zeigler failed to raise issue of PCRA court's noncompliance with Rule 907 on appeal, he waived any defect in the notice).

[2] This response was untimely filed. *See* Pa.R.Crim.P. 907(1) ("The defendant may respond to the proposed dismissal within 20 days of the date of the notice."); Rule 907 Notice, 6/23/2017 ("If[] you choose to respond, your response is due within twenty calendar days of the above date.").

This timely-filed appeal followed.[3] On appeal, Appellant sets forth four issues for our review.

> I. Did the PCRA court err in denying [Appellant's] request for a second evidentiary hearing, and subsequently dismissing [Appellant's] petition for post-conviction relief, despite new evidence that came to light that would have changed the outcome of the trial, namely an exculpatory affidavit provided by a co-defendant? More specifically, should the PCRA court have granted an evidentiary hearing regarding the sworn affidavit of co-defendant [] Orr, where [] Orr states [Appellant] did not participate in the crime, as attached to [Appellant's] reply to the 907 notice?
>
> II. Did trial counsel render ineffective assistance of counsel due to his failure to investigate [Appellant's] alleged possession of the "getaway" vehicle van despite [Appellant's] request? Further, was prior counsel constitutionally ineffective for failing to obtain a traffic citation showing another man was driving [that] vehicle in the days leading up to the robbery?
>
> III. Did trial counsel render ineffective assistance of counsel due to his failure to file a motion to suppress the photo array on the basis that all of the photographs in the array were dated identically with the exception of [Appellant's] photograph?
>
> IV. Did trial counsel render ineffective assistance of counsel due to his failure to call Yasmin Murray and Edward Depiso as alibi witnesses?

Appellant's Brief at 4 (reorganized for ease of disposition).

We begin with Appellant's claim that the PCRA court erred in failing to grant a second evidentiary hearing from his response to the Rule 907 notice raising an after-discovered evidence claim based on co-defendant Orr's affidavit. Appellant's Brief at 23-25.

---

[3] Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

- 4 -

Preliminarily, Appellant did not mention an affidavit by Orr in his petition, but he did raise a similar claim regarding Orr based upon a letter Appellant received from Omar McClarin, who was in prison with Orr. In the letter, McClarin stated that Orr told him Appellant was not involved in the robbery. Appellant did not assert that the PCRA court erred in dismissing the claim regarding the McClarin letter in his Pa.R.A.P. 1925(b) statement, or argue the same in his brief on appeal. Rather, Appellant has only raised the issue of whether the PCRA court erred in dismissing the specific claim regarding Orr's affidavit raised in his Rule 907 response. Although the issues are related, one relates to the after-discovered evidence of McClarin's letter, and one relates to the after-discovered evidence of Orr's affidavit. Accordingly, Appellant's initial claim presenting after-discovered evidence of McClarin's letter is waived. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

Insofar as Appellant attempted to raise a new claim of after-discovered evidence relating to Orr's affidavit in his response to the Rule 907 notice, this was improper.

> The purpose of a Rule 907 pre-dismissal notice is to allow a petitioner an opportunity to seek leave to amend his petition and correct any material defects, the ultimate goal being to permit merits review by the PCRA court of potentially arguable claims. The response to the Rule 907 notice is an opportunity for a petitioner and/or his counsel to object to the dismissal and alert the PCRA court of a perceived error, permitting the court to discern the potential for amendment. The response is also the

opportunity for the petitioner to object to counsel's effectiveness at the PCRA level.

***Commonwealth v. Smith***, 121 A.3d 1049, 1054 (Pa. Super. 2015) (citations and quotation marks omitted). "This does not mean that a defendant may raise entirely new claims that he could have presented prior to his response to the notice of intent to dismiss." ***Commonwealth v. Rykard***, 55 A.3d 1177, 1189 n.8 (Pa. Super. 2012). Rather, "the response is not itself a petition and the law still requires leave of court to submit an amended petition. ***See*** Pa.R.Crim.P. 905(A)." ***Id.*** at 1189.

> The Rules of Criminal Procedure contemplate that amendments to pending PCRA petitions are to be "freely allowed to achieve substantial justice," Pa.R.Crim.P. 905(A), but Rule 905 amendments are not "self-authorizing" such that a petitioner may simply "amend" a pending petition with a supplemental pleading. Rather, the Rule explicitly states that amendment is permitted only by direction or leave of the PCRA court.

***Commonwealth v. Mason***, 130 A.3d 601, 621 n.19 (Pa. 2015) (some citations and quotation marks omitted).

Here, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition on June 3, 2017. This notice did not direct or permit Appellant to amend his PCRA petition to include new claims. Appellant responded to the Rule 907 notice on July 20, 2017, past the 20-day deadline. ***See*** Pa.R.Crim.P. 907(1). According to Appellant's response, Appellant received the after-discovered evidence of Orr's affidavit on May 31, 2017, which was prior to the PCRA court's Rule 907 notice. Reply to 907, 7/20/2017, at 1 (unnumbered). Nonetheless, at no point from May 31, 2017, when

Appellant learned of Orr's affidavit, until March 23, 2018, when the PCRA court dismissed Appellant's petition, did Appellant seek permission to amend his petition to include a claim of after-discovered evidence relating to Orr's affidavit. As such, the PCRA court was under no obligation to review the merits of this new claim, which was improperly raised, without leave of court to amend his petition, in an untimely Rule 907 response. **See Mason**, 130 A.3d at 621 n.19; **Rykard**, 55 A.3d at 1189 & n.8. Accordingly, Appellant is not entitled to relief on this claim.

We now address Appellant's ineffective assistance of counsel claims.

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

**Commonwealth v. Benner**, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting **Commonwealth v. Perry**, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

"To establish ineffectiveness of counsel, a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner." **Commonwealth v. Jones**, 71 A.3d 1061, 1063 (Pa. Super. 2013) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires

rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

When raising a claim that counsel was ineffective for failing to call a potential witness, a petitioner must establish that

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Johnson***, 966 A.2d 523, 536 (Pa. 2009) (citation omitted).

Because some of Appellant's PCRA claims were dismissed without a hearing, we also keep the following in mind.

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the petitioner is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he or she raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Holt***, 175 A.3d 1014, 1017-18 (Pa. Super. 2017) (citations omitted).

Following a review of the record and the briefs for the parties, we conclude that the opinion of the Honorable Denis P. Cohen thoroughly addresses Appellant's issues regarding the ineffective assistance of trial

counsel and applies the correct law to facts that are supported by the record. We discern no error or abuse of discretion on those issues. Therefore, we adopt the PCRA court's opinion of August 9, 2018, as our own with respect to Appellant's ineffective assistance of counsel issues.[4] PCRA Court Opinion, 8/9/2018, at 11-19.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/19

---

[4] The parties shall attach a copy of the PCRA court's August 9, 2018 opinion to this memorandum in the event of further proceedings.

**IN THE COURT OF COMMON PLEAS**

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

**CRIMINAL TRIAL DIVISION**

**FILED**

2018 AUG -9 PM 2: 01

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,<br><br>          APPELLEE<br><br>v.<br><br>KAHLIL MURRAY<br><br>          APPELLANT | COURT OF COMMON PLEAS - PHILADELPHIA COUNTY<br>CP-51-CR-0005584-2008<br><br><br>SUPERIOR COURT NO. 1225 EDA 2018 |

CP-51-CR-0005584-2008 Comm. v. Murray, Kahlil
Opinion

8147869741

**OPINION**

## 1. FACTUAL BACKGROUND

On May 10, 2007, at 1:30 A.M., Donovan Henry, a grocer, was walking towards his home and business, located at 923 S. 19th Street. N.T. 9/10/08 at 44, 45. The grocery store is on the first floor at that address. *Id.* Upstairs is a one-bedroom living space that Mr. Henry shares with his girlfriend, Angela Weston. *Id.* As Mr. Henry approached the South 19th Street address he noticed someone sitting on the steps. *Id.* at 45. Thinking this person was a neighbor, Mr. Henry continued on his way. *Id.* When Mr. Henry attempted to open the door and enter the home an unidentified man ran up to Mr. Henry, stuck a gun in his back, and forced Mr. Henry inside the home. *Id.* at 47. Once inside, the assailant was joined by two additional men. *Id.* at 46, 47. Mr. Henry subsequently identified one of the men who joined the original assailant as Appellant, Kahlil Murray. *Id.* at 46.

The gun-toting assailant pushed Mr. Henry to the ground, kicked him several times, repeatedly yelling at Mr. Henry, "I'm going to kill you. Where is the money?" *Id.* at 47. The assailants bound Mr. Henry's hands and feet with duct tape and covered Mr. Henry's eyes with duct tape. *Id.* Mr. Henry testified that Appellant then instructed the other two men to go upstairs, to keep asking Mr. Henry for money, and to keep beating and kicking Mr. Henry. *Id.* Mr. Henry also testified that all three men were armed, at least two with guns and one with a stun gun. *Id.* at 48. Mr. Henry stated that he pled with the three assailants not to hurt Ms. Weston. *Id.* Mr. Henry further testified that the attackers again asked him where the money was and threatened to kill him. *Id.*

Eventually, on Appellant's orders, two of the men went upstairs to the living space where Ms. Weston was asleep in the bedroom. *Id.*; N.T. 9/11/08 at 5. Ms. Weston was awakened when two of the men entered the bedroom and turned the lights on. N.T. 9/11/2008 at 5. The assailants shouted at Ms. Weston, "Shut the f-ck up. Where is the money? Where are the drugs?" *Id.* Ms. Weston told the men that she did not have any money or drugs and further stated "The only money here is whatever is in the store." The third man, identified by Mr. Henry and Ms. Weston as Appellant, joined the other two men in the bedroom and brought Mr. Henry upstairs with him. N.T. 9/10/2008 at 49; N.T. 9/11/2008 at 7. Appellant, threw Mr. Henry on the floor and instructed both Mr. Henry and Ms. Weston to lay face down. *Id.* at 8. Appellant, noticing that Ms. Weston had not been bound, directed the two other assailants to tie her up. N.T. 9/11/2008 at 8. Ms. Weston continued to explain that they did not have any more money. *Id.*

Appellant found Mr. Henry's electric handsaw, entered the bedroom with said handsaw, and plugged it in. N.T. 9/10/2008 at 49; N.T. 9/11/2008 at 8-9. The assailants turned the television on and put the volume up very loud. N.T. 9/10/2008 at 49-50; N.T. 9/11/2008 at 9.

2

Appellant yelled at Mr. Henry, "I'm going to cut you up. I'm going to kill you." N.T. 9/10/08 at 50. Contemporaneously, the assailants were searching the upstairs living space. *Id.* at 49-51. After some time had passed Appellant turned off the handsaw and commenced pulling drawers out of a dresser, tossing the drawers onto Mr. Henry, kicking Mr. Henry, and threatening Mr. Henry's life. *Id.* at 49; N.T. 9/11/2008 at 9. After attacking Mr. Henry and Ms. Weston for nearly two hours Appellant eventually stated that he would not kill either of them because "it's not worth it." N.T. 9/10/2008 at 53, 56; N.T. 9/11/2008 at 10, 24. Appellant and the two other assailants left the premises, but before doing so took dishwashing liquid, cat food, blunts, candy, other assorted items, and $400.00 in cash. N.T. 9/10/2008 at 56, 57; N.T. 9/11/2008 at 21.

Once Mr. Henry and Ms. Weston heard the assailants run down the stairs and exit the premises, Ms. Weston took off the duct tape that the assailants had used to bind her. N.T. 9/11/2008 at 23. Ms. Weston then retrieved Mr. Donovan's cell phone and called the police. *Id.* Mr. Henry watched out of the bedroom window and relayed information to Ms. Weston as she spoke with the 911 operator. 9/10/2008 at 59-60. Mr. Henry testified that he first observed Appellant try to steal Mr. Henry's car using Mr. Henry's keys, which Appellant had stolen during the assault. N.T. 9/10/08 at 59. Appellant was unsuccessful in stealing the vehicle because the car was secured with a foot lock. *Id.* A burgundy van then drove up to the front of the property and Appellant fled in said burgundy van. *Id.*

In the early morning hours of May 10, 2007 Philadelphia Police Officer James McCrorey was on duty in the 17th District, near the intersection of 21st Street and Washington Avenue. N.T. 9/11/2008 at 117. Officer McCrorey and his partner, Officer Jenkins, were responding to a radio call that was broadcast to Philadelphia police officers asking officers to look for a red van. *Id.* at 118. Officer McCrorey observed a van that matched the description that had come out over the

3

radio at 20th Street and Washington Avenue. *Id.* at 119. Officer McCrorey attempted to pull the van over at 21st and Washington Avenue. *Id.* Initially the van did pull over, but before the officers could safely exit their vehicle the van pulled away. *Id.* at 118-19. Officer McCrorey and Officer Jenkins pursued the van as it travelled westbound on Washington Avenue, turned onto 25th Street, and then again westbound on Ellsworth Street. *Id.* at 119-20. During this pursuit, Officer McCrorey called over the radio and notified other officers in the area. *Id.* at 120. The occupants of the van abandoned the vehicle at 26th Street and Ellsworth Street. *Id.* at 120.

Philadelphia Police Officer Francis McGrenra was on duty in the morning of May 10, 2007 and heard Officer McCrorey's call come out over the radio. *Id.* at 123-24. Officer McGrenra responded as back up and observed two black males running on 27th Street between Ellsworth Street and Federal Street. Officer McGrenra proceeded in his vehicle up 26th Street and apprehended a black male at the corner of 26th Street and Ellsworth Street. *Id.* at 125. This male was identified as Quron Abney. *Id.* at 125. Officer Francis McGrenra recovered two cell phones, $117.00 in cash and black knit gloves from Mr. Abney. *Id.* at 126.

Philadelphia Police Sergeant Douglas Vogelman was also on duty on the morning of May 10, 2007 and was serving as back up to Officers McCrorey and Jenkins. Sergeant Vogelman initially responded in his vehicle and observed two males running in the area of 27th Street and Ellsworth Street. *Id.* at 137-38. Sergeant Vogelman ultimately exited his vehicle in pursuit of the two men and after a brief foot chase saw one of the men being arrested by Officer McGrenra—as detailed above. The other male was apprehended on Ellsworth Street, near the intersection with 27th Street by Sergeant Vogelman and two other officers. *Id.* at 138. The man apprehended by Sergeant Vogelman was identified as Shariyq Orr. *Id.* at 143. Sergeant Vogelman testified that immediately prior to apprehending Mr. Orr, Sergeant Vogelman observed Mr. Orr take a gun out

4

of his waistband and throw said gun on the ground next to an unmarked police car. *Id.* at 138. That gun was recovered by the responding officers and later identified as a Sig Sauer automatic handgun with one live round in the chamber and ten live rounds in the magazine. *Id.* at 143. Sergeant Vogelman also testified that during the course of the foot chase he observed the suspects discard other items, including a ski mask. *Id.* at 139.

Philadelphia Police Officer Christopher Leary, was also on duty on the morning of May 10, 2017 and participated in the arrest of Mr. Orr. *Id.* at 142. Officer Leary testified that at the time of Mr. Orr's arrest, Mr. Orr was carrying a black hooded sweatshirt that was found to contain blue and white gloves, a set of keys, a Sprint palm pilot, and some narcotics. *Id.* at 143-45. Officer Leary also stated that he recovered a Smith and Wesson 357 revolver from a flower pot at 2616 Ellsworth Street. *Id.* at 147. The revolver contained 5 live rounds and one spent shell casing. *Id.* at 146. A second black hooded sweatshirt was also recovered by Officer Leary from the steps of 2608 Ellsworth Street. *Id.* at 149. This second sweatshirt contained a stun gun. *Id.*

Contemporaneous to the pursuit and subsequent arrests of Mr. Abney and Mr. Orr, Philadelphia Police Officer Patrick Dio and his partner, Philadelphia Police Officer John Frei, responded to a radio call for a home invasion robbery at 923 South 19th Street. *Id.* at 160. Officer Frei, upon learning about the apprehension of Abney and Orr, escorted Mr. Henry and Ms. Weston to the area of Ellsworth Street between 26th and 27th Street. N.T. 9/10/08 at 61. N.T. 9/11/08 at 26, 161. Mr. Henry and Ms. Weston identified Mr. Abney and Mr. Orr as the men that had come into their home and business that evening. N.T. 9/10/08 at 62; N.T. 9/11/08 at 27.

Officer Frei also took Mr. Henry and Ms. Weston to a second location that morning. N.T. 9/10/08 at 61-62; N.T. 9/11/08 at 26. Police found a burgundy van parked on Oakford Street between 26th Street and 27th Street, near where Mr. Abney and Mr. Orr were apprehended. N.T.

5

9/10/2008 at 164, 165. Mr. Henry identified the van as the same burgundy van he had seen the assailants use to flee the scene of the attack. N.T. 6/10/2008 at 62. The van was subsequently towed to the Police garage and on May 23, 2007 Philadelphia Police Detective Louis Gregg executed a search warrant on the burgundy van. *Id.* at 198; N.T. 9/11/2008 at 163-64. Detective Gregg seized an electric guitar, several bags of clothing, an air mattress, some bags with a box of cigars in it, and bags with DVDs and video tapes. N.T. 9/11/2008 at 164-65.

The burgundy van recovered from Oakford Street was registered to Nicholas Trott. *Id.* at 165-66; N.T. 9/11/2008 at 166. Philadelphia Police Detective Robert Conn interviewed Mr. Trott on May 21, 2007. N.T. 9/11/2008 at 85. At that time, Mr. Trott stated that he was acquainted with Appellant Khalil Murray and had known Appellant for less than a year. *Id.* at 85-86. Mr. Trott stated that he had entered into an agreement with Appellant to buy the burgundy van for $4800.00 and that during May 2007 Appellant was using the van. *Id.* at 86-87. The van was never transferred into Appellant's name, but pursuant to Appellant's agreement with Mr. Trott, Appellant was permitted exclusive use of the van and would bring the van back and forth to Mr. Trott's home. *Id.* at 87-88. At the May 21, 2007 interview Mr. Trott identified Appellant in a photo array as the man that he had arranged to sell his van to. *Id.* at 91-92; N.T. 9/10/2008 at 176-77.

The information that Detective Conn elicited from Mr. Trott coincided with information that Detective Conn had accumulated during the early stages of his investigation. N.T. 9/10/2008 at 169-70. Namely, Detective Conn had received information that led him to characterize Appellant as the prime suspect in the investigation. *Id.* at 170. In fact, even before Mr. Trott identified Appellant and connected Appellant to the burgundy van, both Mr. Henry and Ms.

6

Watson identified Appellant as one of the men who had entered their home on the night of the attack. *Id.* at 171-72., 174-75.

On May 24, 2007 Detective Conn obtained an arrest warrant for Appellant. *Id.* at 180-81. On that day, Detective Conn attempted to locate Appellant at two different addresses. *Id.* at 181. Appellant was not located at either address. *Id.* Appellant was ultimately arrested on January 23, 2008. *Id.* at 182.

## 2. PROCEDURAL HISTORY

On September 15, 2008, a jury sitting before this Court convicted Appellant Khalil Murray on two counts of Robbery (victim, Donovan Henry and victim, Angela Weston),[1] one count of Burglary,[2] one count of Criminal Conspiracy,[3] one count of Firearms Not to be Carried Without a License,[4] and one count of Possessing an Instrument of Crime.[5] Pursuant to a pre-trial agreement with counsel, this Court, after the jury's verdict, entered a verdict of guilty for Persons Prohibited from Possessing a Firearm.[6]

On December 15, 2008, this Court sentenced the Appellant to an aggregate sentence of twenty (20) to forty (40) years incarceration followed by ten (10) years probation.[7] On each of the Robbery charges, Appellant received ten (10) to twenty (20) years to be served consecutively. N.T. 12/15/2008 at 35-36. As to the charges of Criminal Conspiracy and Burglary

---

[1] 18 Pa.C.S. § 3701(a)(1)(ii), The jury found that Appellant threatened his victims with immediate serious bodily injury and therefore the robbery counts were graded as a first degree felony. 18 Pa.C.S. § 3701(b).

[2] 18 Pa.C.S. § 3502. The jury found that the structure burglarized by the defendant was adapted for overnight accommodation, and the victims were present at the time of the burglary. N.T. 9/15/2008 at 15. Accordingly, the defendant's burglary is graded as a first degree felony. 18 Pa.C.S. § 3502(c).

[3] 18 Pa.C.S. § 903. The charge of Criminal Conspiracy was graded as first-degree felony—the same grade as the underlying Robbery. 18 Pa.C.S. § 905(a); N.T. 12/15/2008 at 7.

[4] 18 Pa.C.S. § 6106 (a third degree felony).

[5] 18 Pa.C.S. § 907 (a first degree misdemeanor).

[6] 18 Pa.C.S. § 6105 (a second degree felony).

[7] This Court sentenced the defendant to consecutive sentences of ten to twenty years incarceration for each Robbery and ten to twenty years incarceration, concurrent, for Conspiracy and Burglary. The defendant was also sentenced to ten years consecutive probation for Prohibited Person Possessing a Firearm, and a determination of guilt without further penalty for Firearms Not to be Carried Without a License and Possessing an Instrument of Crime.

this Court sentenced Appellant to ten (10) to twenty (20) years, but allowed Appellant to serve those sentences concurrent to the sentence on the Robbery charges. *Id.* Appellant received ten years probation, to be served consecutively on the charge of Persons Prohibited from Possessing a Firearm. *Id.* at 37. No further penalty was imposed for Firearms Not to be Carried Without a License or Possessing an Instrument of Crime. *Id.* On December 18, 2008 Appellant appealed his conviction and sentence. On February 23, 2010 the Superior Court vacated Defendant's sentence and remanded the matter to this Court for re-sentencing consistent with the Pennsylvania Supreme Court's opinion in *Commonwealth v. Jarowecki. See* 985 A.2d 955, 961-64 (Pa. 2009).

On June 30, 2010 this Court sentenced Defendant to an aggregate sentence of eighteen (18) to thirty-six (36) years, followed by ten (10) years probation. N.T. 6/30/2010 at 42. Appellant received a sentence of eight (8) to sixteen (16) years on each count of Robbery, to be served consecutively. *Id.* at 40. Appellant also received a sentence of five (5) to ten (10) years on the Burglary charge, and two and a half (2 ½) to five (5) years on the charge of Criminal Conspiracy. *Id.* This Court ordered that the Burglary and Conspiracy sentences be served concurrently. *Id.* This Court re-imposed the same sentence of ten years probation on the charge of Persons Prohibited from Possessing a Firearm and imposed no further penalty as to the charges of Firearms Not to be Carried Without a License and Possessing an Instrument of Crime. *Id.* at 40-41. It was further stated that Appellant would receive credit for time served prior to the re-sentencing. *Id.* at 42.

In July 2, 2010 Appellant appealed his new sentence, arguing that this Court should have considered his prior record score to be zero. On September 9, 2011 the Superior Court affirmed Appellant's sentence. On March 23, 2012 the Supreme Court of Pennsylvania denied Appellant's Petition for Allowance of Appeal.

Appellant filed a PCRA Petition on November 13, 2012. On August 14, 2014 appointed counsel J. Matthew Wolfe, Esq. filed an Amended PCRA Petition. On May 13, 2015 Brian Zeiger, Esq. entered his appearance on behalf of Appellant. On December 17, 2015 Mr. Zeiger filed a second Amended PCRA Petition. On March 7, 2016 the Commonwealth filed a Motion to Dismiss Appellant's PCRA Petition. Appellant filed a response to the Commonwealth's Motion on March 22, 2016. On June 24, 2016 the parties appeared before this Court and gave extensive oral argument on the issues set forth in Appellant's PCRA Petition. This Court held the matter under advisement and re-listed the matter for an evidentiary hearing on September 30, 2016. Appellant's trial counsel was unavailable on September 30, 2016 and so said evidentiary hearing was rescheduled for April 28, 2017. On that date, this Court heard testimony from Appellant and from Appellant's trial counsel. Testimony centered on the issue of whether trial counsel was ineffective for failing obtain records to prove that other people besides Appellant used the burgundy van, whether trial counsel was ineffective for failing to suppress the victims' identification of Appellant in a photo array, and whether trial counsel was ineffective for failing to call certain alibi witnesses. The matter was held under advisement and on June 22, 2017 this Court denied Appellant's PCRA Petition based on an independent review of the record and on the evidence presented at the prior hearing. This Court sent a 907 Notice on June 22, 2017 and the matter was listed for formal dismissal on September 29, 2017.

On July 13, 2017 Appellant wrote to his PCRA counsel, Mr. Zeiger, asking to respond to the 907 Notice with newly discovered evidence. On July 20, 2017 counsel filed a response to the 907 Notice including an affidavit from Appellant's co-defendant Shariyq Orr that stated a man named "Black" was the third assailant the night of the robbery and further stating that Appellant had nothing to do with said robbery. At the listing on September 29, 2017 the Commonwealth

9

requested a ninety day continuance to investigate this newly discovered evidence. The matter was relisted for December 15, 2017 and on that day the Commonwealth asked for an additional thirty days to review certain notes of testimony that had just been made available to them. On January 26, 2018 the Commonwealth stated that they would file a formal response by the close of the day and Appellant asked for sixty days to respond to the Commonwealth's filing. The matter was relisted for February 16, 2018 at which time Appellant's counsel did not appear and the matter was continued until March 23, 2018. On March 23, 2018 this Court found that the newly discovered evidence did not warrant a new trial and the matter was formally dismissed.

On April 19, 2018 Appellant filed a Notice of Appeal to the Superior Court. On April 24, this Court ordered Appellant to submit a 1925(b) statement within twenty-one days. Counsel did not timely comply with this request, but instead wrote to this Court asking for an extension of time to file said 1925(b) Statement. Appellant's informal request for extension of time to file said Statement was granted. On May 29, 2018 Appellant filed a Statement of Matters Complained on Appeal raising the following issues:

1.) Whether trial counsel rendered ineffective assistance of counsel due to his failure to investigate the Defendant's alleged possession of the "getaway" van despite the Defendant's request? Further whether prior counsel was constitutionally ineffective for failing to obtain a traffic citation showing another man driving [the burgundy van] in the days leading up to the robbery?

2.) Whether the trial court erred in denying the defendant's request for a second evidentiary hearing, and subsequently dismissing the defendant's petition for post-conviction relief, despite new evidence that came to light that would have changed the outcome of the trial, namely an exculpatory affidavit provided by a co-defendant? More specifically should the court have granted an evidentiary hearing regarding the sworn affidavit of co-defendant Shariyq Orr, where Mr. Orr states that Appellant did not participate in the crime, as attached to Appellant's reply to the 907 Notice?

3.) Whether trial counsel rendered ineffective assistance of counsel due to his failure to file a motion to suppress the photo array on the basis that all of the photographs in the array were dated identically with the exception of Petitioner's photograph?

4.) Whether trial counsel rendered ineffective assistance of counsel due to his failure to call Yasmin Murray and Edward Depiso as alibi witnesses?

10

Each point is addressed in turn below.

## 3. ANALYSIS

### A.) *Trial Counsel was Not Ineffective*

In Pennsylvania, counsel is presumed effective and a defendant bears the burden of proving otherwise. Comm. v. Steele, 961 A.2d 786, 796-97 (Pa. 2008). In order to meet this burden of proof a defendant must prove three requirements by a preponderance of the evidence: (1) the claim has arguable merit; (2) counsel lacked any reasonable basis for his action or omission; and (3) petitioner was prejudiced by counsel's conduct. *Id.*; Comm. v. Gwynn, 596 Pa. 398, 405–06, 943 A.2d 940, 945 (2008); *see* Comm. v. Collins, 585 Pa. 45, 888 A.2d 564 (Pa. 2005); Comm. v. Pierce, 515 Pa. 153, 527 A.2d 973 (Pa. 1987). Even in a circumstance where counsel is found to be ineffective, counsel's ineffectiveness is only deemed prejudicial where there is a reasonable probability that, *but for* counsel's ineffectiveness, the result would have been more favorable to the defendant. Comm. v. Daniels, 104 A.3d 267, 285 (Pa. 2014).

#### 1.) Trial Counsel Was Not Ineffective for Failing to Investigate Appellant's Exclusive Possession of the Burgundy Van

Appellant argues that trial counsel was ineffective because he failed to investigate and obtain critical exculpatory evidence—namely a traffic ticket issued to Clayton Cressman while operating the burgundy van on May 8, 2007. This traffic ticket at the heart of Appellant's argument was issued to Mr. Cressman while Mr. Cressman was driving Mr. Trott's burgundy van. Appellant argues that this traffic citation shows Appellant was not the only person in possession of the van on the night of the robbery. Further, Defendant argues that this traffic citation undercuts the testimony of Mr. Trott who had stated Appellant had exclusive use of the vehicle on May 10, 2007. *See* N.T. 9/11/2008 at 88. The Commonwealth in turn argues that Appellant has not met his burden of proof to prove that trial counsel was ineffective because

11

Appellant has failed to demonstrate that Appellant suffered prejudice by counsel's failure to obtain this documentation. More specifically, the Commonwealth states that introduction of this traffic ticket would not have resulted in a different outcome because the ticket merely shows that someone else drove the vehicle on May 8, 2007—two days prior to the home invasion and robbery—but does not show someone else was in possession of the car on May 10, 2007, the night of the home invasion and robbery.

Looking to the first requirement to prove ineffective assistance of counsel, the merit of Appellant's claim, this Court acknowledges that Appellant's claim with regard to the traffic ticket does have arguable merit. The traffic ticket, in so much as it was issued to someone other than Appellant who was driving the same burgundy van used in the underlying crime, said traffic ticket does demonstrate that other people used and had access to the burgundy van during the relevant time period. N.T. 4/28/2017 at 16-18. Further, this traffic ticket contradicts the testimony that Mr. Trott gave at trial and as such introduction of this evidence could have served to undermine Mr. Trott's testimony. *See* N.T. 9/11/2008 at 88; N.T. 4/28/2017 at 16-18.

As to the second requirement, counsel lacked any reasonable basis for his action or omission, this Court finds that Appellant has not shown that this requirement is met. At the evidentiary hearing Appellant's trial counsel testified that he did not believe the ticket was relevant to the case because the ticket in question was issued on May 8, 2017, two days prior to the home invasion, and as such had no bearing on who was in possession of the van on May 10, 2007, the night of the incident. N.T. 4/28/2017 at 16-17. Further, Appellant's trial counsel testified that he would not have changed his entire defense strategy based merely on one traffic ticket. *Id.* Counsel further testified that even if prior to trial counsel had found evidence that showed that someone other than Appellant was in possession of the van counsel would not have

changed his defense strategy in the case. *Id.* at 18-19. Thus here, where Appellant's counsel clearly stated that he had a specific defense strategy and that even if he had discovered this ticket or other similar evidence showing the same, knowledge that such evidence existed would not have changed the defense strategy. Therefore, based upon the testimony of counsel, this Court finds counsel had a reasonable basis for his action. *See* Comm. v. Reed, 42 A.3d 314, 324-25 (Pa. Super. Ct. 2012) (finding that counsel had a reasonable basis for their action where said action was part of an overall trial strategy, even though that strategy did not result in acquittal); Comm. v. Williams, 899 A.2d 1060, 1064 (Pa. 2006) (stating that failing to pursue exculpatory evidence is not *per se* ineffectiveness because said evidence might not actually be exculpatory, particularly where said evidence depends on the candor of the client).

Finally, addressing the third requirement that Appellant be prejudiced by counsel's action, this Court finds that Appellant has not shown that he was prejudiced by counsel's failure to obtain and introduce the traffic ticket at trial. Within the context of ineffective assistance prejudice requires Appellant to show that but for counsel's ineffectiveness the outcome of the proceedings would have been different. *See, e.g.,* Comm. v. Ali, 10 A.3d 282, 291 (Pa. 2010) (quoting Comm. v. Spotz, 870 A.2d 822, 829-30 (Pa. 2005)). Here, this Court finds that Appellant has made no such showing. First, the traffic ticket in question was not issued on the night of the home invasion and robbery. N.T. 4/28/2017 at 18. Thus, while the traffic ticket does show that someone other than Appellant did have access to and use of the burgundy van and this evidence is in contradiction to some of the evidence submitted at trial, the traffic ticket does not conclusively show that Appellant was not in possession of the van on May 10, 2007, the night of the home invasion/robbery. *Id.* Second, Appellant had the opportunity to present evidence at trial that showed other people had access to and use of the burgundy van and Appellant declined to do

13

so. N.T. 9/12/2008 at 30, 34; N.T. 4/28/2017 at 23, 53. Within this context, this court finds that even if counsel had located the May 8, 2007 traffic ticket and introduced such evidence at trial that this evidence would not have changed the verdict.

### 2.) Trial Counsel Was Not Ineffective for Failing to File A Motion to Suppress the Photo Array

Appellant also argues that trial counsel was ineffective for failing to file a Motion to Suppress the photo array because the photo array was highly suggestive and the circumstances surrounding the identification created a severe risk of misidentification. Appellant states that the failure to file this Motion was inconsistent with Appellant's trial defense—that he was misidentified—and if photo array had been suppressed there would have been insufficient evidence to convict Appellant. The Commonwealth contests that the photo array was suggestive.

Addressing first whether Appellant's claim has arguable merit, this Court finds that Appellant's claim as to the photo array does not have arguable merit. The central question in assessing identification evidence is whether the identification was reliable. Comm. v. Moye, 836 A.2d 973, 976 (Pa. Super. Ct. 2003) (citing Comm. v. Meachum, 711 A.2d 1029, 1034 (Pa. Super. Ct. 1998)). To judge the reliability of identification evidence, courts must look to the totality of the circumstances. *Moye*, 836 A.2d at 976. Under this approach, the factors to be considered are the suggestiveness of the identification process, the opportunity the witness had to view the perpetrator at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the perpetrator, the level of certainty demonstrated by the witness, and the time between the crime and the identification. *Id.* The suggestiveness of the identification process is to be weighed against the other factors. *Id.*

14

Within this context, this Court does agree with Appellant that the photo array, wherein it contained a photo of Appellant time stamped the day after the crime and seven other photos all time stamped five days later and within five minutes of one another, was suggestive. N.T. 9/10/2008 at 169; *see* Comm. v. Davis, 17 A.3d 390, 394 (Pa. Super. Ct. 2011) (citing Simmons v. United States, 390 U.S. 377, 383 (1968)) ("Suggestiveness arises when the police employ an identification procedure that emphasizes or singles out a suspect."). Despite the suggestiveness of this photo array, this Court finds that the other factors indicate that the identification is nevertheless reliable. *See Davis*, 17 A.3d at 394; *Moye*, 836 A.2d at 976.

Here, Mr. Henry and Ms. Watson each separately and immediately identified Appellant when showed the photo array. N.T. 9/10/2008 at 171, 173-74. It should be noted that Mr. Henry and Ms. Watson have been unwavering in their identification of Appellant, having later identified Appellant on at least two subsequent occasions—at a preliminary hearing and later at trial. N.T. 9/10/2008 at 46; N.T. 9/11/2008 at 7; N.T. 4/28/2017 at 59. Further, Mr. Henry and Ms. Watson had ample opportunity to view the perpetrator on the night of the home invasion and robbery because the perpetrators spent roughly two hours in the home on the night of the incident. *See Moye*, 836 A.2d at 976-77 (determining an identification was reliable where the victim observed the perpetrators for one to two minutes); McElrath v. Comm., 592 A.2d 740, 743 (Pa. Super. Ct. 1991) (determining an identification was reliable where the victim observed the perpetrator at close range for approximately five seconds). Additionally, the photo array identification occurred only six days after the home invasion and robbery, which was sufficiently brief to provide an indicia of reliability to the identification. *See* Comm. v. Bruce, 717 A.2d 1033, 1037 (Pa. Super. Ct. 1998) (upholding as reliable an identification that occurred five days after the crime). Thus, in the present case, even though the time stamp on the photos included in

15

the array does indicate that the identification process was suggestive, when weighed against the other factors and considered on the whole, there is sufficient evidence here to determine that the identifications are reliable and therefore Appellant's claims as to the photo array are without arguable merit.

Having found that Appellant's claims as to the photo array are without merit, it is not necessary to reach the second and third prong of the analysis. *See* Comm. v. Perry, 128 A.3d 1285, 1289 (Pa. Super. Ct. 2015). Further, in so much as this Court found Appellant's claims were without merit, no evidentiary hearing was held as to this issue. *See* Comm. v. Payne, 794 A.2d 902, 906 (Pa. Super. Ct. 2002) (stating that the right to a hearing in the PCRA context is not absolute and that it is within the discretion of the PCRA court to deny a petition without an evidentiary hearing if the Court determines the claims raised in the petition are without merit).

### 3.) Trial Counsel Was not Ineffective for Failing to Call Alibi Witnesses

Appellant argues that counsel was ineffective for failing to call two witnesses—Yasmin Murray and Edward Depiso—whose testimony Appellant states could have changed the outcome of the trial. Appellant states that Ms. Murray would have testified her ex-husband had use of the burgundy van and that Mr. Depiso would have testified that Appellant was not in possession of the burgundy the day before the home invasion and robbery. In response, the Commonwealth states that Appellant was not prejudiced by this action and further points to Appellant's colloquy at trial where Appellant stated that he did not wish to call Ms. Murray as an alibi witness.

As a preliminary matter, the argument that trial counsel was ineffective for failing to call Yasmine Murray as an alibi witness is wholly without merit because that decision was Appellant's. N.T. 9/12/2008 at 30, 34. This Court conducted an extensive colloquy

16

of Appellant at trial and upon conclusion of the colloquy this Court was satisfied that Appellant's decision not to call Ms. Murray as an alibi witness, was made knowingly, intelligently, and voluntarily. *Id.* at 30, 34-35. As such, counsel cannot be deemed ineffective for failing to call Ms. Murray as an alibi witness. *Id.*; *see* Comm. v. Paddy, 800 A.2d 294, 316 ("the decision not to call alibi witnesses was [defendant's], and his decision has not been shown to have been unknowingly, involuntarily, or unintelligently made, this allegation of ineffectiveness lacks arguable merit").

Addressing then counsel's failure to call Edward Depiso as an alibi witness, this Court finds that counsel was not ineffective for failing to call this witness. First, addressing the merit of this claim, in order to sustain this claim Appellant must show that: (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; (5) the absence of the testimony was so prejudicial to Appellant so as to have denied him a fair trial. *See, e.g.,* Comm. v. Miner, 44 A.3d 684, 687 (Pa. Super. Ct. 2012) (citing Comm. v. Clark, 961 A.2d 80, 90 (Pa. 2008)). To this end, Appellant has submitted an affidavit from Mr. Depiso stating that was available and willing to testify and that on May 7, 2007 he drove around South Philadelphia with Appellant looking for Appellant's vehicle. Depiso Aff. Further, Appellant states that he provided his counsel with this information ahead of trial. N.T. 4/28/2007 at 29, 31.

Considering both Mr. Depiso's affidavit and Appellant's testimony at the evidentiary hearing, Appellant has proven only four of the five elements required to sustain his claim as to Mr. Depiso. Even construing as true everything that Mr. Depiso states in his affidavit, all that Mr. Depiso's testimony would have shown was that on May

17

7, 2007—three days before the home invasion and robbery—Appellant was not in possession of his van. Depiso Aff. Here, where Mr. Depiso's testimony makes no showing as to whether Appellant had possession of the van on May 10, 2007—the night of the home invasion—this Court does not find that such evidence would have changed the verdict in this case. *See Clark*, 961 A.2d at 91 (rejecting a claim of ineffective assistance of counsel for failure to call a particular witness where the Appellant failed to show that the witness's testimony would have affected the verdict). Thus here, where Appellant's claim is without merit said claim fails. *See Perry*, 128 A.3d at 1289; *Clark*, 961 A.2d at 91, 96.

In the present case, considering the fact that Appellants claims regarding the alibi witnesses are entirely without merit, it is not necessary to reach the second and third prong of the analysis for ineffective assistance of counsel. *Perry*, 128 A.3d at 1289. Nevertheless this Court will briefly address each prong. As to the second prong, this prong is not met because this Court finds that counsel did have a reasonable basis for his failure to call these witnesses—namely that at the time of trial Appellant did not want to do so. N.T. 9/12/08 at 30, 32-41 (colloquy of Defendant discussing the decision not to call Yasmine Murray specifically and the decision not to call alibi witnesses generally). Finally, as to the third prong of prejudice this Court also briefly notes that no prejudice to Appellant has been shown. In this regard, Appellant purports that both witnesses would speak to the fact that he allowed other people to use his van, and not to where Appellant was at the time the crime was committed. Such evidence could serve to undercut the testimony of Mr. Trott, but would not change the verdict in this case. *See* Comm. v. Holloway, 739 A.2d 1039, 1048 (Pa. 1999) (stating that failing to call an alibi witness did

18

not prejudice a defendant where that witness could not testify to seeing a defendant at the time the crime and calling such potential testimony useless to defendant's defense).

*B.) Appellant's Claim of Newly Discovered Evidence Did Not Require a Second Evidentiary Hearing Because Said Claim is Without Merit*

Response to a 907 Notice is not a new PCRA Petition. Comm. v. Rykard, 55 A.3d 1177, 1187 (Pa. Super. 2012). Rather, a response to a 907 Notice is construed as an objection to dismissal of the PCRA Petition. *Id.* at 1189. As such, a response to a 907 Notice is not subject to the same procedural requirements of the PCRA Petition itself and in this regard, a Petitioner's response to the 907 Notice may be evaluated on its merits. *See id.* at 1187, 1189. Further, where a claim is entirely without merit a court may dismiss that claim without a hearing because no purpose would be served by further proceedings. Comm. v. Harris, 852 A.2d 1168, 1180 (Pa. 2004). As such, where this Court determined that Appellant's claim lacks merit and that Appellant is not entitled to relief based on the information raised in Appellant's response to the 907 Notice this Court formally dismissed Appellant's PCRA Petition without holding a second evidentiary hearing. *See id.*

Looking to the merits of the claims raised by Appellant in the response to the 907 Notice, Appellant's claim of new evidence is without merit. In the PCRA context, to succeed on a claim of newly discovered evidence a Petitioner must show each of the following: (1) the evidence has been discovered after the trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; (2) the evidence is not merely cumulative or corroborative; (3) the evidence will not be used solely to impeach the credibility of a witness; (4) the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted. *See, e.g.,* Comm. v. Hannibal, 156 A.3d 197, 221 (Pa. 2016); Comm. v. Padillas, 997 A.2d 356, 363 (Pa. Super. Ct. 2010). Further, the newly discovered evidence must be

19

producible and admissible in order to entitle a petitioner to relief. *Hannibal*, 156 A.3d a 221. In the present case, Appellant's claim as to the newly discovered evidence fails because Appellant has not met his burden on each of the four requirements.

First, as to the requirement that newly discovered evidence could not have been obtained at or prior to trial by the exercise of reasonable diligence, the newly discovered evidence at issue here—namely a sworn affidavit from co-Defendant Shariyq Orr stating that Appellant is innocent and describing a man known as Black, who Mr. Orr alleges actually committed the crime—does not satisfy this requirement. Appellant argues that this requirement is met because Mr. Orr is only now coming forward with this information. This argument, though, ignores the fact that Mr. Orr's identity has always been known to Appellant and that Appellant could have at least questioned Mr. Orr prior to this present moment. *See* Comm. v. Smith, 17 A.3d 873, (Pa. 2011) (finding that new eyewitness testimony from a witness who was known to Appellant at the time of trial did not constitute after-discovered evidence because the content of the witness's statement could have been obtained at or prior to trial); *Padillas*, 997 A.2d at 364 (discussing case precedent on the issue of after-discovered evidence and stating that a defendant who fails to question or investigate an obvious available source of information, cannot later claim evidence from that source constitutes newly discovered evidence).

Second—as to the requirement that the evidence is not merely cumulative or corroborative—the evidence likely satisfies this requirement. In this regard, Appellant's theory of his defense was that he was misidentified. Said evidence at issue goes beyond proving mere misidentification, but rather, if true, would stand to demonstrate that the actual perpetrator of this crime is someone other than Appellant. As such, where this evidence goes beyond the evidence

20

previously presented at Appellant's trial such evidence of Black's involvement is not cumulative or corroborative.

Third—the evidence will not be used solely to impeach the credibility of the witness— the newly discovered evidence also meets this requirement. Although the evidence could be used for impeachment purposes, namely to impeach the testimony of Mr. Henry and Ms. Watson, the newly discovered evidence has probative value beyond mere impeachment. Here, the newly discovered evidence, if true, demonstrates that the Petitioner is actually innocent.

Fourth—the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted—this requirement is decidedly not met. In this regard, it should be noted that courts in this Commonwealth have repeatedly stated that recantation testimony is notoriously unreliable. *See, e.g.,* Comm. v. Henry, 708 A.2d 313. 321 (Pa. 1997); *McCracken,* 659 A.2d at 541. Here, when Mr. Orr pled guilty the Commonwealth stated that the charges Mr. Orr was pleading guilty to stemmed from an incident involving Appellant. N.T. 9/4/08 at 9-10. During his colloquy, which was taken in open court and under oath, Mr. Orr never contested Appellant's involvement or disputed the facts as stated by the Commonwealth. *Id.* Thus, now, where Mr. Orr has submitted an affidavit that is in direct contradiction to the information previously placed on the record, this Court finds that Mr. Orr's new claims are unreliable. Given the questionable validity of Mr. Orr's new statement this Court finds that Appellant has failed to show that this new evidence would compel a different verdict. *See Hannibal,* 156 A.3d at 221; *Padillas,* 997 A.2d at 363.

## 4. CONCLUSION

For the foregoing reasons, the decision of this Court should be affirmed.

BY THE COURT:

_____
DENIS P. COHEN, J.

Dated: August 8, 2018